# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Black GPS Tracker<br>Identifying # LL301 ("Target Device") | Case No. **23mj4095** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841 | Possession and Distribution of Controlled Substances |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Manuel Angulo, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephones__ *(specify reliable electronic means)*.

Date: November 8, 2023

*Judge's signature*

City and state: San Diego, California

HON. BERNARD G. SKOMAL, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black GPS Tracker

    Identifying # LL301 ("Target Device")

A photograph of the Target Device is as follows:



The Target Device is currently in the possession of the Drug Enforcement Administration (DEA) located at 2425 La Brucherie Road, Imperial, California.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the Target Device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below. The seizure and search of the Target Device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Device will be electronic records, communications, and data such as emails, and activity logs from various third-party applications, web history, files, metadata, photographs, audio files, videos, and location data, for the period of September 5, 2023, up to and including October 5, 2023:

- a. tending to indicate efforts to import controlled substances from Mexico into the United States and/or to distribute controlled substances within the United States;

- b. tending to identify co-conspirators, criminal associates, or others involved in the importation and/or distribution of controlled substances from Mexico into the United States;

- c. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States and/or the distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

- d. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

- e. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, U.S.C., §§ 841, 846, and 953, 960, and 963.

# AFFIDAVIT

I, Manuel Angulo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>Black GPS Tracker
>
>Identifying # LL301 ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections, 841 and 846 (distribution controlled substances and conspiracy to do the same) and 952, 960, and 963 (importation of controlled substances and conspiracy to do the same), (the "Subject Offense") as further described in Attachment B. The requested warrant relates to the investigation of Jose CASTRO-Simental (CASTRO) commission of the subject offenses, including the current prosecution of CASTRO for knowingly and intentionally importing a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, into the United States from a place outside the United States, in violation of Title 21, United States Code, Section 841. The **Target Device** is currently in the custody of the Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am Special Agent with the Department of Justice, specifically the Drug Enforcement Administration ("DEA"), and I have been so employed since March 2021. I am currently assigned to the Imperial County District Office and have been so since July 2021.

4. I graduated college from the University of California, Irvine in June 2015. From June 2016 to March 2021, I was a U.S. Border Patrol Agent having been stationed in Douglas, Arizona prior to being transferred to Calexico, CA in January 2018. Upon being hired as a DEA Special Agent, I attended a sixteen-week DEA academy in Quantico, Virginia, where I received training in all aspects of controlled substance investigations, including, but not limited to, the enforcement of controlled substance laws, investigation of controlled substance trafficking, controlled substance recognition and terminology, case management, undercover operations, interviewing techniques, the gathering of evidence, preservation of a crime scene, and the use of electronic surveillance. In connection with my official DEA duties, I investigate criminal violations of federal controlled substance laws and related offenses, including violations of Title 21, United States Code, 801 *et seq.* and the Federal Controlled Substance Act. I have received training, both formal and informal.

5. During my employment with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to smuggle narcotics into the United States from Mexico and further distribute narcotics within the United States.

6. I am aware that it is common practice for narcotics traffickers to work in concert utilizing electronic devices such as Global Positioning System (GPS) Trackers and cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States through Ports of Entry, including the three Ports of Entry located in the Imperial County. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for smuggling the concealed

2

narcotics into the United States ("the courier").  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the courier regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the courier to remotely monitor the progress of the narcotics, provide instructions to the courier and to warn the courier about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the courier to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that GPS Trackers can and often do contain electronic evidence, including, for example, activity logs, communications, and data, such as emails from various third-party applications, location data, audio files and videos. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS Tracker. Specifically, searches of GPS Trackers associated to individuals involved in the distribution of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States and/or to distribute controlled substances within the United States;

b. tending to identify co-conspirators, criminal associates, or others involved in the importation and/or distribution of controlled substances from Mexico into the United States;

c. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States and/or the distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

3

d.  tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

e.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8. On October 5, 2023, Border Patrol Agents (BPA) Salvador Martin Jr, was assigned to primary inspection duties at to a fully functional United States Border Patrol (USBP) Checkpoint on Highway 86 near Westmorland, California. At approximately 9:10 P.M., a white Kenworth Semi tow truck (Kenworth) bearing California license plate 9G66305 approached the primary inspection area. BPA Martin proceeded to conduct a primary inspection of the driver, later identified as Jose Roberto CASTRO-Simental (CASTRO). During the primary inspection, CASTRO stated he was a Mexican national travelling alone to Mecca, California. BPA Andres Gonzalez along with a Human Narcotics Detection Dog (HNDD) were also assigned at the USBP Checkpoint on Highway 86 and were conducting primary inspection along with BPA Martin.

9. BPA Gonzalez and his HNDD are certified in the detection of marijuana, cocaine, methamphetamine, heroin and their derivatives, as well as the detection of concealed humans. During questioning at primary, BPA Gonzalez and his HNDD conducted a canine sniff around the exterior of the Kenworth which produced a positive alert to the passenger side fuel tank of the Kenworth. Subsequently, BPA Martin referred CASTRO to secondary inspection.

10. In the secondary inspection, BPA J. Castillo asked CASTRO for consent to search the Kenworth. CASTRO gave consent and BPA Castillo then searched the Kenworth. BPA Gonzalez had the HNDD conduct another canine sniff of the exterior of the Kenworth, which resulted in another positive canine alert for narcotics on the passenger side gas tank. Due to the positive canine alert, BPA Castillo opened the gas

cap of the passenger side gas tank and discovered the liquid in the gas tank was cloudy and a crystal-like substance around the filler tube was identified. Based on BPA Castillo's training and experience, when methamphetamine is mixed in fuel it appears cloudy. BPA Castillo then moved to the driver side gas tank and opened the gas cap. BPA Castillo observed that the fuel inside the driver side gas tank was clear. BPA Castillo retrieved a Narcotics Analysis Reagent Kit (NARKII) and tested a sample of the liquid solution from the passenger gas tank. The liquid solution extracted from the passenger-side gas tank of the Kenworth that CASTRO was driving field tested positive for the characteristics of methamphetamine.

11. CASTRO was then placed under arrest and booked into a detention facility.

12. Border Patrol Agents discovered the **Target Device** in the Kenworth during an inventory search. Specifically, the **Target Device** was found in a compartment attached to the Kenworth cabin wall behind the driver's side seat. Border Patrol Agents notified Drug Enforcement Agents upon arrival at the scene. DEA then seized the **Target Device** under suspicion the **Target Device** contained evidence of the crime being investigated.

## METHODOLOGY

13. It is not possible to determine, merely by knowing the GPS Tracker's make, model and/or serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. GPS Tracking devices today can be accessed remotely over the internet to view current locations in real-time, can be associated with a telephonic number and may include microphones which can be accessed by calling the phone number associated to the GPS Tracking device. Unlike typical computers, many GPS Trackers do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS Tracker models using forensic hardware and

software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the GPS Tracker and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

16. There have been no prior attempts to obtain this evidence.

## CONCLUSION

17. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of Defendant's commission of the **Target Offenses**. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

                                       Manuel Angulo
                                       DEA Special Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  8th  day of November, 2023.

_____
Honorable Bernard G. Skomal
United States Magistrate Judge

7